Good morning, your honors. May it please the court, I'm John Gayhart on behalf of Mr. Jimenez. And this is our cat claim case where we have to determine whether there are substantial grounds for believing that Mr. Jimenez will suffer or be in danger of being subjected to torture. In Kalamathas this But we don't make that decision, right? We have to determine whether the BIA has substantial evidence supporting its finding. Even if we were to disagree with it, right? Yes. In this, this court has held in Kalamathas that credible testimony may suffice to sustain a burden of proof without corroboration. And in this particular case, if you may... May, not must, right? May, of course may. If you've read through the transcript, the court's aware that this family had a very difficult time producing the evidence. And I put forth on direct testimony all of the efforts that they made to get the evidence of the danger facing their son and brother, Mr. Jose Jimenez. And it brings us down to this very pesky standard that we're always fighting with, which is more likely than not. And how do you judge that? And Judge Scott Laurent, my wonderful colleague, you know, found that it was not more likely than not that we had not met our burden of proof that there are substantial grounds. And I disagree with Scott on this matter because I have 36 years of vengeance, murders, and tortures of Mr. Jimenez's family in Nayarit. It's not speculative because, in essence, I brought the, and the family brought all the news reports. They gave their testimony. We have a trail of bodies. And in most criminal investigations, the kind of evidence that we have would certainly suffice to get a warrant, make an arrest, press charges. There are substantial grounds for believing that there is a vendetta against this family. And, again, the standard here is not a criminal standard, beyond a reasonable doubt. We just need a more likely than not substantial grounds for believing that he's the avenger. Was there a 24-year gap between the murder of Gregoberto and the next event? Yes. The quarter-century gap is the exact sentence that that gangster got when the father brought him to the hospital and he was convicted and sentenced to prison. That's why nothing happened between the time when he was put into prison and he attempted to kill the father the first time and killed the eldest son, and when he got out of prison and restarted his campaign of killing his family members. And the second time he shot the father, the father survived. The third time he made sure that the father didn't survive. And since then, there have been a number of family members who have been killed and kidnapped and disappeared and tortured, and that's why the family is so fearful. In fact, after Mr. Jimenez's deportation, he was living quietly as he could with his grandmother, and he was also there with another person, another male living in the house. And gangsters came, took, abducted the other male in the house, thinking that it was probably Mr. Jimenez. He has disappeared. No one knows what's happened to him. I'm sorry. This has happened since the deportation? Yes, since his deportation. But that's not in the record, right? It's not in the record. No, of course not. The only thing is my record. I mean, we can't really consider it. We can't consider it. The problem I think that the IJ had was that there was no evidence of, like, individualized vendetta against Mr. Jimenez, who was, you know, the petitioner in this case. And I think if what you say is accurate and you would testify credibly to it, it might be a reason to file a motion to reopen. But unfortunately, we can't consider that evidence when we're judging. And this IJ may be totally wrong. He may have gotten it totally wrong. But can we say on the record before him that, you know, his finding – and it's a tough case because all the witnesses were credible. They were deemed credible. And it does sound like a family vendetta, but I think bottom line the IJ thought, well, what's the evidence that they're really going to go after Mr. Jimenez or that they would actually know who he is? Well, I think that the evidence there is the fact that they didn't stop at the father. You have the brothers and cousins. Anyone from this Jimenez family, the vendetta has extended beyond the father. If it was just wanting to get revenge against the one guy who brought me to the hospital when I didn't want to go to the hospital and caused me to suffer a 25-year jail sentence in a Mexican prison and it would have ended there, then I agree. My case would be substantially weaker. But it goes on and it continues. The murders continue. Wasn't that part of what was the assumption? The evidence was very credible that these things happened, the events to the people. But the rationale behind it, the story that threads them all together, there wasn't anything other than the family's belief that these were all happening as a result of this one individual who was orchestrating this whole thing. There's no ñ I didn't see anything in the record that suggested there was, like, correspondence saying we're going to get you, that there were witnesses outside the family who said, you know, yes, that there's a contract out on everybody's life in that family. They could all be unfortunate random events involving other people and other transactions that members of the family may have been involved in. Okay. I can address that in a couple of ways. First is the abduction of the brother-in-law at, I believe it was, the three-year anniversary of the father's death. The family had gathered to celebrate the father's death. Is that something that's in the record? Yes. Okay. Yes, yes. This was the, I believe, the 2011 abduction and disappearance of another Jimenez male. And that's in the record. And the newspapers reporting it, they themselves tied the family's gathering for remembrance, memorial for the father, and the abduction that happened at the memorial ceremony as all tied together. They, I think, the local news tied it all together because they refer back to all of these events. It wasn't just, oh, family was having a memorial and someone got abducted. I'm sorry. What is the point there, that the newspaper agrees with you? Even the newspapers recognize that. When you say even, what's the. . . The family believing that they are being persecuted by a vendetta. The newspapers reported it similarly, that this is tied together with the initial. . . I'm not sure how that helps you at all. I mean, the newspapers could have gotten it from the family. I mean, what does it. . . Well, I believe. . . How does that cast doubt on the IJ's decision? I think it casts doubt on it because, again, there's substantial. . . It's a substantial reason. These deaths and murders and persecution of this family are tied together. It's not random acts. And even when. . . Well, you say that, but the question you were asked is, you know, how do we know that they didn't have other enemies, you know, other reasons for these events? And your answer is, well, even the newspapers think this is a pattern. I don't see how that's evidence of anything. Okay. I mean, you could bring in, you know, if there were evidence of somebody saying this is a pattern or, you know, somebody yelling out here, I'm shooting you because of what happened. You know, something like that. That would be evidence. The fact that the newspaper, there's a newspaper story coming to the same conclusion. That's not evidence. Okay. The sister trying to negotiate release for her brother, and she got shot also for her trouble trying, again, to deal with the same. . . It's not about. . . If it was just about money, then it would have been a simple ransom, kidnapping. We see these all the time. But they weren't really that interested in a ransom. The sister was shot for her trouble saying, look, we'll pay you. Please release him. Thank you. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent of the Attorney General of the United States. Believing something to be true does not make it so. This case is ultimately a factual dispute, and substantial evidence supports the agency's determination that Petitioner's fears are speculative, and even if valid, that the Mexican government would not acquiesce in his torture. Petitioner bears the burden of proof. I'm sorry. Even if valid, that what? If valid, the Mexican government would not necessarily acquiesce in his torture. I don't believe the Court reads that question. A lot of evidence that the Mexican government cannot control the Sinaloa cartel. Actually, more recent evidence is showing progress in that regard. Again, that is outside the record. I know. That's a problem. Is he eligible to file a motion to reopen at this point? From outside the country, I don't believe so. If I know my regulations correctly. He has to illegally reenter to file a motion to reopen. Potentially illegally reenter and to file a motion to reopen. But ultimately, he wouldn't need to under these circumstances, given that if he has indeed been targeted subsequently, as he said, he still hasn't specified who's doing it. And that is the theme throughout this is we have no idea who is actually doing it. Well, he's saying it was this. I mean, you have credible evidence in the record that says it was the Sinaloa cartel. The Sinaloa cartel is related to his more recent criminal activity, his own transportation of cocaine. It's the other cartel? The Zetas are the ones allegedly involved in the 1980 until 2004, 2008, 2011 incidents. But, again, that's all just familial speculation. Their own testimony, the sisters' testimony, quote, we can't actually say it's them. Also, the individuals that were subjected to the other incidents had more direct contact with the father. Petitioner in his opening brief, for starters, says the father has a penchant, quote, penchant for getting into trouble with criminals. So we don't know why these things are happening. Is it something with the Zetas or against his family? Or is it something that the father has continually done to draw their ire? Father's dead, right? Right. But in terms of why that happened, was it the Zetas? Was it just him engaging in criminal activity and drawing retribution for that? The family assumes it's the Zetas. The family is the one consistently saying it's the Zetas, it's the Zetas, it's the Zetas. No one else has confirmed that. There's nothing to confirm that. There's no correspondence was discussed. Counsel suggests that there's substantial grounds for criminal charges, but against who? We have no idea who would be charged.  And that's what substantial evidence requires. Substantial evidence does not allow for mere disagreement about the facts. The facts could go one way or the other. Credible testimony may be enough to satisfy the burden of proof. But a belief is not enough to create an objectively reasonable result here. You have to have substantial evidence that compels only one result. Now, Mr. Mann has been deported, right? Yes, voluntarily. Yes. What did he say? He voluntarily withdrew his stay motion. He filed a motion to stay his own removal and then voluntarily withdrew it about four days later. But he was deported? Yes. He's in Mexico as far as the government knows. He didn't leave. He didn't self-deport. He was removed, yes. He was removed. But he withdrew his own request to stay. It's a request to stay to the BIA or to the Ninth Circuit? To the Ninth Circuit. And he withdrew that? Uh-huh. So what – I realize the case is not moved, but I'm wondering what relief we could give here if we were to rule in Petitioner's favor. If you ruled in Petitioner's favor, the Court had asked for a supplemental briefing on the facilitation of return question. If the Board requires additional evidentiary information in this case for whatever reason, he would be brought back for that purpose. He was a lawful permanent resident. However, he lost that status given his conceded conviction for transportating a large quantity of cocaine. He is now illegal. Exactly. So let's say the Board does not need further evidence. Then he would remain in Mexico until the Board adjudicates his case. What if they eventually rule in favor of his CAT claim? If they rule in his favor, then he would be entitled to deferral of removal, which I believe gives him – Can he take advantage of that if he is not in the United States? Yes. He would be brought back in. Yes. He'd be allowed – I presume he'd be allowed to be – he'd be paroled into the country and given – You're the government lawyer. Yes. I can presume things. The mechanics of it are – You're supposed to know. The mechanics of it are handled by CIS. But, yes, he would be – So beneath his – His removal would be deferred, essentially undone. I understand – I understand if you're in the country, I understand what it means to defer removal. They let you be here illegally. They make no effort to remove you. It doesn't change your status to being legal or anything. I understand that concept very well. Right. Yes. I am more difficult in understanding how that concept applies to somebody who is not in the United States. Do they actually bring him in illegally? Does he have to sneak back in? No, no. He would be allowed back into the country. He would be entitled to remain for the period specified under the deferral grant. And if he's brought in that way, doesn't that – does he then have an entry? And doesn't that change his status? I'm just wondering what the mechanics of that. Because he's not sneaking in. He is being brought in by the United States. Wouldn't it be like bringing a material witness back in to testify? He'd be paroled back in the United States, held in the custody of the INS. And then if he could post bond, he'd be able to be out of custody, but he would be in the United States under that parole status. I think we're talking about two different scenarios. In Judge Kaczynski's scenario, he's been granted cat deferral, I believe. Is that right? Yes. Right. So he'd be free to go. Okay. Assuming he's completed his criminal sentence, I believe he has. Can I ask you a question? Did you know – so he had one – he committed one criminal – he had one criminal conviction, right? And it was for violating California law, transportation of a controlled substance under Section 11352A. Yes, Your Honor. And was that proved up in this removal proceeding? He has never contested. The conviction? Right. Or any of the facts surrounding it. That involved cocaine. There's a pleading stage admission here that the drug involved was cocaine. So there's really no question. But he admitted to that? I'm sorry? He admitted to that? Yes. Okay. He's never contested. Actually, in page three of his opening brief, upon loading of the 20 pallets of lemons, law enforcement found 79 kilograms of cocaine hidden deep within the pallets. So he was a transporter of the drugs? Yes. Okay. Literally driving the cocaine. Can you bring a motion to reopen at this point? From outside of the country under the regulations of – Let me finish my question. Okay. Yes. Sorry, Your Honor. My apologies. While the case is pending here, could you file a motion to reopen? Or is the case with us and – There is no restriction on his – That is a different question. I was going to ask. Thank you, Your Honor. Do they not teach you at Justice Department to listen to the questions? They do, Your Honor. Getting ahead of myself. So go back and tell them you didn't follow the instructions. I will. Absolutely, Your Honor. So what's the answer? Do you remember the question? I do. I do, actually. That part they teach us as well. The fact that this petition for review is pending does not preclude him from filing a motion to reopen. What could preclude him from filing a motion to reopen is the lapse of time since the Board's decision. I believe the Board's decision here was 2014. Right. But he could allege – this is the way I see it. The IJ found a certain set of country conditions that he was not being – now I'm speaking hypothetically and out of the record. But the IJ found a certain set of country conditions that said, no, the gang is not after him. And the government isn't acquiescing. But he could come in and say, well, circumstances have changed. Here's new evidence that shows this is what happened and they are really after him and put it before the IJ for further fact-finding under that exception, right? He could potentially file that, but I believe the question I thought I was answering before, HCFR 1003.1 – no, .2G, I'm guessing here, but I think that's right – says that if you're outside of the country, you cannot file a motion to reopen. Under these circumstances, however, I would think the Board might consider a sua sponte motion to essentially waive. To find out what's really going on? You mean with this – if they could put evidence of the subsequent – If he has proof, an alien is welcome to file a motion to reopen, especially when there's changed circumstances, essentially at any time. If there is – it has to be materially changed circumstances, but again, he has to satisfy his burden of proof. It's essentially the same. Well, this case – I mean, I recognize he has one criminal conviction, but he doesn't have a lengthy criminal history. And he's been here in the United States since he was a little kid. Yes, ma'am. He has other equities in his favor – his family members, for one. Would you be willing to mediate to see whether he would be able to perhaps allege material change in country conditions? I can't speak definitively for – I believe this is a Los Angeles ICE case decision. For the ICE office, I can't speak definitively for them. I have not asked them about prosecutorial discretion of any kind here. In light of the substantial conviction, it might only be one conviction, but it is still for transporting 79 kilos of cocaine. I've had difficulty with prosecutorial discretion in cases where that – nothing anywhere near that was involved, such as a DUI. I mean, I don't know what the equities were in the other case, but would you be willing to ask them? It is the LA office. I'm certainly willing to ask, yes. It never hurts to ask. Our office typically would not recommend prosecutorial discretion, given this conviction. That makes him a priority one for removal under the prosecutorial discretion memo. Because it's a drug offense or because it's a – Aggravated felony. Aggravated felony. Yes. It's a controlled substance offense and an aggravated felony in this case, especially considering the substantial sentence he received for his involvement in the crime. And did he serve that sentence? I believe he only served part of it. I had difficulty finding exactly how long he served in the record, but he was subject to a sentence enhancement,  And why did he only serve part of the sentence? I don't know, Your Honor. He didn't escape. No. He wasn't that kind of person. He's not El Chapo. No. It's because he's in the United States. Or was in the United States. Okay. Thank you. Okay. Thank you, Your Honor. Okay. Case is argued. We'll stand submitted.
judges: Kozinski, Wardlaw, Bencivengo